LINA ESTHER FIGUEROA, Plaintiff and Appellant, *v.* LUIS BAYRÓN and MAXIMINO RAMÍREZ MERCADO, Defendants and Appellees.

No. 10729. Argued January 26, 1953.—Decided February 12, 1954.

*Mario Báez García* for appellant. *Eduardo A. Ruiz* for appellees.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On January 5, 1946, Lina Esther Figueroa married Maximino Ramírez Mercado; on February 1, 1946, that is, twenty-seven days after contracting marriage, Maximino Ramírez Mercado bought from Juan Gualberto Moréu, Es-

peranza Moréu, and José Agustín Moréu a frame house built on a lot owned by José Alfredo Cristy and located at Muñoz Rivera Street, Mayagüez; on March 5, 1946, that is, fifty-nine days after contracting marriage, the spouses separated and did not have any subsequent marital relations of any kind; on August 22, 1949, Maximino Ramírez Mercado signed a promissory note in favor of Luis Bayrón, to become due on September 22, 1949, for $1,500, with interest at the rate of nine per cent per annum in case of default and with an additional credit of $150 in case of judicial claim; on February 1, 1950, Luis Bayrón filed an action for recovery of the note against Maximino Ramírez Mercado in the former District Court of Mayagüez, Puerto Rico, claiming payment by virtue of the obligation contracted, of one thousand five hundred dollars principal, forty-five dollars for interest accrued and unpaid, and a hundred and fifty dollars for costs, expenses and attorney's fees. To secure the effectiveness of the judgment which might be rendered, Luis Bayrón prayed and obtained from the court the attachment of the property that Maximino Ramírez Mercado had acquired from Juan Gualberto Moréu, Esperanza Moréu, and José Agustín Moréu.

Duly summoned, Maximino Ramírez Mercado did not appear to oppose the complaint filed against him, wherefore, after the statutory period for answering had elapsed, Luis Bayrón moved on February 27, 1950, for default; his motion was granted and on March 30, 1950, the clerk of the court entered the default of Maximino Ramírez Mercado and on that same day, he also entered a judgment against Maximino Ramírez Mercado.

After the judgment was notified in the usual manner, Maximino Ramírez Mercado took no steps to have the judgment set aside, or to appeal; therefore, the judgment became final and enforceable. On May 2, 1950, Luis Bayron prayed and obtained from the court an order for the execution of the judgment. On June 9, 1950 the marshal of the court sold

930

at public auction and to the highest bidder the property of Maximino Ramírez Mercado which had been preventively attached, the highest bidder and the acquirer being Luis Bayron himself.

Alleging that the execution of the promissory note as well as the foreclosure of the house was a conspiracy between her former husband, Maximino Ramírez Mercado and his alleged creditor, Luis Bayrón, to deprive her of her legitimate rights on the community property, plaintiff-appellant, herein, Lina Esther Figueroa, brought in the District Court of Mayagüez on March 26, 1951 an action for annulment, which was decided against her by the trial court of Mayagüez on March 7, 1952.

The trial court, through its judge, Angel Fiol Negrón, disposed of the accusation of fraud in a well-reasoned conclusion to the effect that since the property partook of the nature of separate property rather than of conjugal property, it was illogical to presume the contrary, and conclude that the foreclosure could impair plaintiff's rights in the conjugal partnership. The findings of fact on which the trial court based its conclusions after weighing the evidence, are so consistent with the testimony of plaintiff herself, Lina Esther Figueroa (p. 65 of the transcript of evidence), and of defendant-appellee himself, Maximino Ramírez Mercado (pp. 104, 105, and 106 of the same transcript) that we cannot alter that conclusion. It suffices to state that the spouses married on January 5, 1946, and the house which is the object of the protested foreclosure was bought twenty-seven days afterwards, that is, on February 1, 1946, and that plaintiff-appellant herself admits that the sole source of income of the spouses was a restaurant which "he had bought before we got married," to realize, that if we attempted to carry the presumption of community property to that extreme, we would be sanctioning an absurdity, still more in a case like the present one where the marriage lasted fifty-nine days, and there is nothing in the evidence

worthy of credit to show that the money with which the house was bought was in any way the product of the common enterprise, industry or effort of both spouses.

Having disposed thus of the first error assigned in the light of the conclusion reached as to the separate character of the property foreclosed, we find it is unnecessary to consider the second assignment as to the possible annulment of the judgment by default, because it is clear that plaintiff-appellant in the case herein has no standing as the real party in interest to seek the annulment of the proceeding by which the property in litigation was adjudicated.

The judgment appealed from will be affirmed.